ROBERTSON & ASSOCIATES, LLP
Alexander Robertson, IV (Nevada State Bar No. 8642)
arobertson@arobertsonlaw.com
32121 Lindero Canyon Road, Suite 200
Westlake Village, CA 91361
Tel: (818) 851-3850 / Fax: (818) 851-3851

NEEMAN & MILLS. PLLC
Jeffrey S. Neeman (Nevada State Bar No. 7461)
jsn@neemanmills.com
1201 South Maryland Parkway
Las Vegas, NV 89104
Tel: (702) 822-4444 / Fax (702) 822-4440

Attorneys for Plaintiffs And The Proposed

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES and MICHELLE COX, husband and wife, on behalf of themselves and all others similarly situated; BETTY REDDING, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LUMBER LIQUIDATORS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:15-cv-459<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. Violations of Nevada's Deceptive Trade Practices Act (NRS 598 et seq.);<br>2. Fraudulent Concealment; and<br>3. Breach of Implied Warranty.<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiffs JAMES COX and MICHELLE COX, and BETTY REDDING ("Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Defendant Lumber Liquidators, Inc. ("Defendant"). Plaintiffs hereby allege, on information and belief, except as to those allegations that pertain to the named Plaintiffs, which allegations are based on personal knowledge, as follows:

/ / /

/ / /

/ / /

ROBERTSON & ASSOCIATES, LLP

17700.1

CLASS ACTION COMPLAINT

## INTRODUCTION

1. Since 1988, the State of California has recognized that formaldehyde gas is a chemical known to cause cancer. By 1992, the California Air Resources Board ("CARB") had formally listed formaldehyde as a contaminant with no safe level of exposure.

2. Certain building materials, including laminate flooring, are processed in a way that introduces formaldehyde into the material during manufacturing. In response, the CARB has passed regulations limiting the amount of formaldehyde that may be present. Specifically, the California Code of Regulations, title 17, (which addresses public health), sections 93120 through 93120.12 are known as the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations"). The regulations apply to anyone who manufacturers, distributes, imports, sells, or supplies the designated materials in California.

3. Defendant is a corporation that distributes, markets, and/or sells laminate wood flooring products in California that is subject to 17 California Code of Regulations sections 93120 through 93120.12.

4. Defendant supervises and controls the manufacturing of its laminate wood flooring that takes place in China. Laminate wood flooring consists of a core of pressed wood [commonly referred to as medium-duty fiberboard ("MDF")], which is made up of wood particles bonded together with glue or resin, a high quality photographic image of wood, and a scratch resistant coating. On information and belief, urea-formaldehyde resin is used to bond the wood particles together in the MDF core of laminate flooring.

5. For at least the last two years, certain laminate wood flooring ("Formaldehyde Flooring") manufactured, distributed, sold, and/or controlled by Defendant has contained formaldehyde in excess of the levels allowed under the CARB Regulations ("Design Defect"). Defendant's Formaldehyde Flooring,

includes, but may not be limited to, the following products:

a. 8 mm Bristol County Cherry Laminate Flooring;
b. 8 mm Dream Home Nirvana French Oak Laminate Flooring;
c. 8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;
d. 12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring;
e. 12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring;
f. 12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;
g. 12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;
h. 12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;
i. 12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring;
j. 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;
k. 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;
l. 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601);
m. 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958);
n. 12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring;
o. 12 mm Dream Home Kensington Manor Sandy Hills Hickory

Laminate Flooring;

    p.    12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

    q.    12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

    r.    12 mm Dream Home St. James African Mahogany Laminate Flooring;

    s.    12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

    t.    12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

    u.    12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring;

    v.    12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring;

    w.    12 mm Dream Home St. James Golden Acacia Laminate Flooring;

    x.    12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

    y.    12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring;

    z.    12 mm Dream Home St. James Vintner's Reserve Laminate Flooring; and

    aa.    15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring.

    bb.    Morning Star Bamboo Flooring

6. Defendant supervises and/or controls the manufacturing and packaging of Formaldehyde Flooring in China that Defendant then distributes, markets, and/or

sells in California.

7. Plaintiffs bring this class action on behalf of themselves and all others similarly situated, asserting claims under Nevada's Deceptive Trade Practices Act (NRS. 598 et seq.); fraudulent concealment; and breach of implied warranty. Plaintiffs seek damages and equitable relief on behalf of the Class, which relief includes but is not limited to the following: As a proximate result of Lumber Liquidators' violation of Nevada's Deceptive Trade Practices Act, Lumber Liquidators has been unjustly enriched (in the millions of dollars) at the expense of the Plaintiffs and the Class, and Lumber Liquidators should be required to return to the Plaintiffs and to each member of the Class the purchase price of the Formaldehyde Flooring pursuant to NRS 598.0993 of Nevada's Deceptive Trade Practices Act. Plaintiffs and the Class further seek an order from the court enjoining Lumber Liquidators, and those in concert and participation with it, from conducting or participating in the acts Deceptive Trade Practices alleged herein.

8. Further, to the extent that any class members are elderly or disabled persons, as defined by NRS 598.0933 and NRS 598.0936, respectively, Plaintiffs seek actual damages, punitive damages and reasonable attorney's fees pursuant to NRS 598.0977. The collection of any restitution award has priority over the collection of any civil penalty imposed pursuant to NRS 598.0973.

## PARTIES

9. Plaintiffs JAMES COX and MICHELLE COX reside in Las Vegas, Nevada.

10. Plaintiff BETTY REDDING, resides in Las Vegas, Nevada.

11. Plaintiffs purchased Formaldehyde Flooring believing it to be reasonably safe to use for the purpose for which they were intended.

12. Defendant Lumber Liquidators, Inc. is a Delaware corporation with its headquarters and principal place of business in Toano, Virginia. Defendant conducts substantial business in the State of Nevada, and in the County of Clark.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a state different from the Defendant.

14. This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation that is authorized to conduct business in Nevada and it has intentionally availed itself of the laws and markets of Nevada through the promotion, marketing, distribution and sale of its laminate wood flooring products. Each named plaintiff purchased their Formaldehyde Flooring in Nevada.

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a), because Defendant transacts a substantial amount of its business in this District.

## FACTUAL ALLEGATIONS

16. On or about January 17, 2011, Plaintiffs JAMES and MICHELLE COX purchased Kensington Manor Golden Teak 12mm laminate flooring from Lumber Liquidators' Las Vegas store No. 054 for a total purchase price of $4,050.73. The label on the packaging read, *inter alia*: "CARB [¶] CALIFORNIA PHASE 2 [¶] Compliant for Formaldehyde".

17. On or about November 28, 2014, Plaintiff BETTY REDDING purchased St. James Golden Acacia 12mm laminate flooring from Lumber Liquidators' store No. 054, located at 27 South Stephanie Street, Henderson, Nevada, 89012 for the purchase price of $2,171.60. The label on the packaging read, "CARB No. SCS-CARB-000090, CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde."

18. Despite the fact that the Formaldehyde Flooring fails to meet California's requirements for formaldehyde emissions, Defendant has made numerous representations to the contrary. Defendant's packaging and website expressly represent to consumers in Nevada that the Formaldehyde Flooring meets California's CARB Regulations.

19. Defendant's website leads consumers to believe that its laminate wood flooring products comply with the CARB formaldehyde standards when they do not. The website states as follows:

<u>Is Lumber Liquidators Compliant with the California law?</u>

**Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards**. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

<u>Does CARB only apply to California?</u>

Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country.

<u>What extra steps does Lumber Liquidators take to ensure compliance?</u>

In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing.** This is done as a monitoring activity to validate ongoing quality control.

20. After the dangerous formaldehyde levels in Lumber Liquidators' products was featured on the CBS News program "60 Minutes," Lumber Liquidator responded by posting a letter from its Chairman on its website stating:

> Let me make one thing very clear – our laminate products, all of our products, are 100% safe.
>
> ...
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing compliance personnel around the world and utilizing the latest in cutting-edge technology to provide our customers with top quality and high value flooring.

21. Moreover, the product packaging for Defendant's laminate wood flooring states: "CARB ... CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde." On information and belief, this statement is presented on all of Defendant's laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB Regulations.

22. On information and belief, at all times relevant to this action, Defendant has knowingly misrepresented its laminate wood flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its laminate wood flooring products

23. Plaintiffs have suffered injury in fact and loss of money or property. They have been damaged in the amount they paid for Formaldehyde Flooring. Moreover, if no safe replacement laminate wood flooring product exists, Plaintiffs have suffered damages in the amount of the full price they paid for Formaldehyde Flooring and the cost to remove Formaldehyde Flooring and installation for replacement flooring. In the event safe replacement laminate wood flooring exists, Plaintiffs' damages are the cost of replacing the defective Formaldehyde Flooring

with safe laminate wood flooring.

## CLASS ALLEGATIONS

24. This action may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure Rule 23. The Class is sufficiently numerous, since it is estimated to include tens of thousands of consumers throughout Nevada, the joinder of whom in one action is impracticable, and the disposition of whose claims in a class action will provide substantial benefits to the parties and the Court.

> Class Definition: Without prejudice to later revisions, the Class which Plaintiff seeks to represent is composed of: all consumers who purchased Formaldehyde Flooring in Nevada from the time of their introduction in the marketplace through and including the date of class notice (the "Class"). Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that distribute or sell Formaldehyde Flooring, the Judge(s) assigned to this case, and the attorneys of record in this case.

25. Throughout discovery in this litigation, Plaintiffs may find it appropriate and/or necessary to amend the definition of the Class. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

26. Ascertainable Class: While Plaintiffs do not know the exact number and identity of all class members, Plaintiffs are informed and believe that there are tens, if not hundreds, of thousands of class members. The precise number of members can be ascertained through discovery, which will include Defendant's sales, service and other business records.

27. Common Questions of Law and Fact Predominate: There is a well-defined community of interest among the Class. The questions of law and fact common to the Class predominate over questions that may affect individual Class Members. These questions of law and fact include, but are not limited to, the following:

a. Whether Defendant exercised reasonable care in testing its Formaldehyde Flooring prior to its release for commercial sale;

b. Whether Defendant's Formaldehyde Flooring is defective when used as directed, intended or in a reasonably foreseeable manner;

c. Whether feasible alternative safer formulations of the Formaldehyde Flooring were available;

d. Whether Defendant's Formaldehyde Flooring was fit for its intended purpose;

e. Whether Defendant has breached the implied warranty of fitness for a particular purpose;

f. Whether Defendant has breached the implied warranty of merchantability;

g. Whether Defendant has violated the Magnuson-Moss Warranty Act;

h. Whether Defendant has acted negligently;

i. Whether Defendant knew that the Formaldehyde Flooring were, and are, materially defective;

j. Whether Defendant omitted and concealed material facts from its communications and disclosures to Plaintiffs regarding the design defects inherent in the Formaldehyde Flooring;

k. Whether Defendant breached its express and/or implied warranties;

l. Whether Defendant is strictly liable to Plaintiffs and the class;

m. Whether Defendant failed to warn Plaintiffs and the class;

n. Whether Defendant has violated Nevada's Deceptive Trade Practices Act;

o. Whether Defendant has received funds from Plaintiffs and class members that it unjustly received;

p.  Whether Plaintiffs and proposed class members have been harmed and the proper measure of relief;

q.  Whether Plaintiffs and proposed class members are entitled to an award of punitive damages, attorneys' fees and expenses against Defendant; and

r.  Whether, as a result of Defendant's misconduct, Plaintiffs are entitled to equitable relief, and if so, the nature of such relief.

28. <u>Numerosity</u>: The Class is so numerous that the individual joinder of all members of the Class is impractical under the circumstances of this case. While the exact number of members of the Class is unknown to Plaintiffs at this time, Plaintiffs are informed and believe the Class consists of thousands of persons. Individual joinder of Members of the Class is also impracticable because the individual Members are dispersed throughout Nevada.

29. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the proposed class. Plaintiffs and all class members have been injured by the same wrongful practices of Defendant. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all class members and are based on the same legal theories.

30. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that he has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they has suffered are typical of all other Class Members. Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel.

31. <u>Superiority</u>: the disposition of Plaintiffs' and proposed class members' claims in a class action will provide substantial benefits to both the parties and the Court. The nature of this action and the nature of laws available to Plaintiffs and the

Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because:

    a.    The individual amounts of damages involved, while not insubstantial, are such that individual actions or other individual remedies are impracticable and litigating individual actions would be too costly;

    b.    If each Class Member was required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with vastly superior financial and legal resources;

    c.    The costs of individual suits could unreasonably consume the amounts that would be recovered;

    d.    Given the size of individual proposed class member's claims and the expense of litigating those claims, few, if any, proposed class members could afford to or would seek legal redress individually for the wrongs Defendant committed against them and absent proposed class members have no substantial interest in individually controlling the prosecution of individual actions;

    e.    This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured; and

    f.    Without a class action, proposed class members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct.

    g.    Plaintiffs know of no difficulty that will be encountered in the

      h. Proof of a common business practice or factual pattern which Plaintiffs experienced is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the causes of action alleged; and

      i. Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

  32. Plaintiffs and Class Members have all similarly suffered irreparable harm and damages as a result of Defendant's unlawful and wrongful conduct. This action will provide substantial benefits to Plaintiffs, the Class and the public because, absent this action, Plaintiffs and Class Members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain proceeds of its ill-gotten gains.

**FIRST CAUSE OF ACTION**

**Violations of Nevada's Deceptive Trade Practices Act**

**(NRS § 598 et seq.)**

  33. Plaintiffs and the Class incorporate by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

  34. The acts, omissions, and practices of Defendant as alleged herein constituted, and continue to constitute deceptive trade practices within the meaning of NRS §§ 598.0915 and 598.0925. Plaintiffs have standing to bring this action under NRS § 598.0993 because they have suffered injury in fact and have lost money because of the Defendant's conduct.

  35. Defendant has engaged in "deceptive trade practices" by, in the course of its business or occupation, knowingly making a false representation that the Formaldehyde Flooring was compliant with the CARB Regulations for formaldehyde, when in fact it was not.

36. Defendant's actions described herein constitute deceptive trade practices within the meaning of NRS §§ 598.0915 and 598.0925 in that Defendant has failed to disclose that the Formaldehyde Flooring contains the Design Defect. Defendant's failure to disclose the Design Defect was likely to mislead Plaintiff and the Class into believing that the Formaldehyde Flooring was free from defect and safe to use.

37. As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiffs and the Class.

38. The aforementioned unlawful or unfair business acts or practices conducted by Defendant has been committed in the past and continue to this day. Defendant has failed to acknowledge the wrongful nature of its actions. Defendant has not corrected or publicly issued individual and comprehensive corrective notices to Plaintiffs and the Class or provided full restitution and disgorgement of all ill-gotten monies either acquired or retained by Defendants as a result thereof, thereby depriving Plaintiff and the Class of laminate wood flooring that does not have an unreasonable risk of harm for personal injury.

39. Pursuant to NRS § 598.0993, Plaintiffs and the Class seek an order of this Court requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiffs and the Class full restitution of all monies wrongfully acquired by Defendant by means of such deceptive conduct, so as to restore any and all monies to Plaintiffs and the Class and the general public, which were acquired and obtained by means of such deceptive conduct, and which ill-gotten gains are still retained by Defendant. Plaintiffs and the Class additionally request that such funds be impounded by the Court or that an asset freeze or constructive trust be imposed upon such monies by Defendant. Plaintiffs and the Class may be irreparably harmed and/or denied and effective and complete remedy if such an order is not granted.

/ / /

/ / /

## SECOND CAUSE OF ACTION

### Fraudulent Concealment

40. Plaintiffs and the Class incorporate by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

41. Defendant advertised and/or marketed its Formaldehyde Flooring to be safe, of good quality free from defects, and that they would perform in their reasonably expected operation and/or use for their full useful lives. Defendant failed to disclose that its Formaldehyde Flooring contained a Design Defect, as described above, and that the Design Defect posed a serious risk of personal injury. These facts were not known to Plaintiff and the Class.

42. Alternatively, Defendant intentionally failed to disclose the fact that its Formaldehyde Flooring contained a Design Defect, a fact that was only known to Defendant, and Plaintiffs and the Class could not have discovered it. Plaintiffs are informed and thereon believe that Defendant knew of the Design Defect from its performance of standard testing prior to placing the Formaldehyde Flooring into the stream of commerce.

43. Plaintiffs and the Class reasonably relied and continue to rely upon Defendant to sell laminate wood flooring without a Design Defect that causes an unreasonable risk of harm. Defendant knew or ought to have known that Plaintiff and the Class relied and/or continues to rely upon Defendant to sell laminate wood flooring in which the entire lifetime of the goods could be fully used without an unreasonable risk of harm. Defendant's knowledge that its Formaldehyde Flooring contains a Design Defect combined with Defendant's knowledge that Plaintiffs and the Class relied or relies upon Defendant to communicate the true state of facts relating to its Formaldehyde Flooring creates a legal obligation on Defendant's part to disclose to Plaintiffs and the Class these facts. Defendant is in a superior position to know the truth about, and the nature of, the Formaldehyde Flooring.

///

44. Defendant intended and intends to deceive Plaintiffs and the Class by failing to disclose that the Formaldehyde Flooring contains a Design Defect and is likely to fail in advance of their reasonably expected useful life inasmuch as it causes an unreasonable risk of harm to consumers.

45. Defendant's failure to disclose the Design Defect and risk of harm was material. Plaintiffs and the Class would not have purchased the Formaldehyde Flooring had they known of the Design Defect and risk of harm, which is significant, recognizable, real, and demonstrable. Moreover, this same Design Defect, if not remedied, can result in catastrophic personal injury.

46. Plaintiffs and the Class were harmed. As a proximate result of Defendant's conduct as set forth in this cause of action, Plaintiffs and the Class will now be required to remedy the Design Defect, described above, so as to avoid the distinct likelihood that they may suffer personal injury as a result of such Design Defect. In addition, Plaintiffs and the Class members have suffered damages, which include, but are not limited to the cost to repair the Design Defect.

47. Defendant's concealment was a substantial factor in causing that harm.

48. The wrongful conduct of Defendant, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious, and/or in conscious disregard for the wellbeing of Plaintiffs and the Class along with other members of the public that may be personally injured by the excessive levels of Formaldehyde gas emitted from the Formaldehyde Flooring. Defendant intended to cause injury to the Plaintiffs and the Class placing profits over safety. Defendant engaged, and continues to engage, in despicable conduct with a willful and conscious disregard of the rights or safety of others. Defendant subjected, and continues to subject, Plaintiffs and the Class to cruel and unjust hardship. Accordingly, Plaintiff and Class members are entitled to an award of punitive damages against Defendant in an amount to deter it from similar conduct in the future.

## THIRD CAUSE OF ACTION

### Breach of Implied Warranty

49. Plaintiffs and the Class incorporate by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

50. By placing its Formaldehyde Flooring in the stream of commerce, Defendant impliedly warranted that its Formaldehyde Flooring was reasonably safe for its intended use, i.e., to provide flooring without exposing consumers to excess levels of formaldehyde gas.

51. Defendant's Formaldehyde Flooring is not merchantable. In breach of the implied warranty of merchantability, Defendant's Formaldehyde Flooring fails emits unlawful amounts of Formaldehyde gas.

52. Defendant's Formaldehyde Flooring was not reasonably safe for its intended use when it left Defendant's control and entered the market.

53. The Formaldehyde Flooring defects were not open and/or obvious to consumers.

54. Any purported limitation of the duration and scope of the implied warranty of merchantability given by Defendant is unreasonable, unconscionable and void, because Defendant knew or recklessly disregarded that the defect in the Formaldehyde Flooring existed and might not be discovered, if at all, until the Formaldehyde Flooring had been used for a period of time longer than the period of any written warranty, and Defendant willfully withheld information about the defect from purchasers of Formaldehyde Flooring. Moreover, due to the unequal bargaining power between the parties, Plaintiffs and the class members had no meaningful alternative to accepting Defendant's attempted pro forma limitation of the duration of any warranties.

55. As a result, Plaintiffs and proposed class members have been damaged in, inter alia, the amount they paid to purchase and replace Defendant's un-merchantable Formaldehyde Flooring, and if no safe replacement exists, in the

amount they paid for their Formaldehyde Flooring and the cost to remove and replace it with non-toxic flooring.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other individuals similarly situated, request the following relief:

  A. That the Court determine that this action may be maintained as a class action under Rule 23;

  B. Injunctive relief prohibiting Defendant from continuing to distribute and/or sell laminate flooring products that violate the CARB Regulations;

  C. Restitution of all monies Defendant received from Plaintiffs and the class members based on its violation of NRS §598.0993;

  D. Damages to be determined in at trial including actual, compensatory, and consequential damages incurred by Plaintiffs and class members;

  E. An award of reasonable attorneys' fees and costs;

That the Court award such other and further relief as this Court may deem appropriate.

DATED: March 12, 2015

ROBERTSON & ASSOCIATES, LLP

Alexander Robertson, IV, Esq.
Nevada Bar No. 8642
32121 Lindero Canyon Road, Suite 200
Westlake Village, CA 91361

NEEMAN & MILLS. PLLC
Jeffrey S. Neeman, Esq.
Nevada State Bar No. 7461
1201 South Maryland Parkway
Las Vegas, NV 89104

***Attorneys for Plaintiffs***

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby request a jury trial on the claims so triable.

DATED: March 12, 2015

ROBERTSON & ASSOCIATES, LLP

Alexander Robertson, IV, Esq.
Nevada Bar No. 8642
32121 Lindero Canyon Road, Suite 200
Westlake Village, CA 91361

NEEMAN & MILLS, PLLC
Jeffrey S. Neeman, Esq.
Nevada State Bar No. 7461
1201 South Maryland Parkway
Las Vegas, NV 89104

*Attorneys for Plaintiffs*